Williamson's Estate.

Argued December 1, 1930. Before Frazer, C. J., Walling, Simpson, Kephart, Sadler, Schaffer and Maxey, JJ.

*Max B. Elwert,* for appellant.—Appellant was entitled to a one-fifth share of the residue of the estate: Smith's App., 23 Pa. 9; Yarnall's App., 70 Pa. 335.

*Edward J. Toole,* for appellees.—Courts can construe a will only as made; they cannot add anything to it in order to carry out a possible but unexpressed intention which cannot properly be implied from the language used: French's Est., 292 Pa. 37; Fenstermaker's Est., 4 Pa. D. & C. 691; Schwartz's Est., 27 Pa. Dist. R. 227.

The specific devise given to appellant must be construed with the residuary portion of the will in order to carry out the plain meaning of the will as a whole: Bingaman's Est., 281 Pa. 497; Rupp v. Stevens, 297 Pa. 448; Cooper v. Pogue, 92 Pa. 254; Long v. Paul, 127 Pa. 456; Patton v. Church, 168 Pa. 321; Saxton v. Mitchell, 78 Pa. 479.

In the absence of illegal conditions and statutory enactments a testator may impose any stipulation he chooses, or may make any division, equal or otherwise, as he may elect; the taker is not bound to accept: Dunshee v. Dunshee, 243 Pa. 599; Eichelberger's Est., 135 Pa. 160; Myers v. Myers, 16 Pa. Superior Ct. 511.

Opinion by Mr. Justice Maxey, January 5, 1931:

The problem before us is the interpretation of the will of Amanda F. Williamson, who died December 28, 1928, unmarried and without issue, leaving a last will, providing as follows:

"To my brother Edward Everet Smith, I will my Phila. Rapid Transit Bonds, also Penn Power & Light

Bonds, property 5217 N. Warnock St., to my brother D. H. L. Smith during his life and not to be sold for his debts at his death to go to his son George Williamson Smith my Property and Mortgages also Liberty Bonds to be equally divided between my five brothers, Lorenzo Smith, Edward E. Smith, Horace Smith, Warren Smith, D. H. L. Smith.

"The money to be divided so that D. H. L. Smith will receive no more than the four brothers mentioned with him including the property 5217 Warnock St., at a price of $4,500. My brother Edward Everet Smith to be Exert to look after everything and divide my furniture and belongings as he thinks best as I would care to have them."

We agree with the court below that the testatrix, in using the word "money" as she used it in the second paragraph of the portion of her will now before us for construction, intended it to comprehend her entire residuary estate: Talbot v. Anderson, 292 Pa. 454. In Ostrom v. Datz, 274 Pa. 375, 379, this court, speaking through Mr. Justice SCHAFFER, said, "It is apparent from the will before us that in using the word 'money' in the connection he did, testator intended to dispose of all his property remaining after the specific devise and bequests." This use of the word "money" is in good dictionary repute. Webster's New International Dictionary gives this as one of the definitions of money: "Wealth reckoned in terms of money; capital considered as a cash asset; specifically, such wealth or capital dealt in as a commodity to be loaned, invested, or the like."

The property, "premises No. 5217 North Warnock Street," referred to in the first paragraph of the portion of the will before us for construction, was subject to a mortgage for $3,000 at the time of the deceased's death. The brother, D. H. L. Smith, contends that he should receive his one-fifth share of the residuary estate without any deduction, or, if anything is deducted, it

must be (1) either the value of the life estate for him in the property at 5217 North Warnock Street based upon a valuation of $4,500, subject to the amount of the mortgage, which is $3,000, or (2) $1,500, the equity in the property, being the difference between $4,500 and the amount of the mortgage. The executor and other residuary legatees or their assignees oppose this, and contend that the entire $4,500 must be deducted from the share of D. H. L. Smith.

The court below interpreted the words, "To my brother D. H. L. Smith during his life and not to be sold for his debts at his death to go to his son George Williamson Smith," as indicating that the testatrix regarded her brother, D. H. L. Smith, and his son George, a unit for the purpose of inheriting a one-fifth interest in her residuary property, or, as the court expresses it: "Manifestly the decedent regarded the bequest to her brother as an entire devise." We agree with this conclusion.

The testatrix's wish was to assure her brother, D. H. L. Smith, the full enjoyment of his one-fifth interest during his lifetime, and she was solicitous to protect his interest against creditors and to make certain that upon his death it would go to his son George. As the court below pertinently pointed out, no other children of any of the other brothers were mentioned.

Having provided in her will that her brother, D. H. L. Smith, and his son George, should together have the property at 5217 North Warnock Street as part of their one-fifth interest of the residuary estate, the question is, at what figure did the testatrix intend to charge this property to his brother and the latter's son? Was it at the price of $4,500 less the encumbrance of $3,000, i. e., at $1,500, or was it at $4,500 without any deduction for this encumbrance? The intention of the testatrix must prevail and we must therefore determine what it was. The intention of a testator must be sought from the whole instrument, and, having thus been ascertained,

must be enforced: Line's Est., 221 Pa. 374, 378. As it is probable that no other reported will ever had the grammatical engineering of the will before us, it is useless to search for precedents which will guide us infallibly in determining the testatrix's intentions. Lord COKE never made a more sage observation than when he said: "Wills and the construction of them do more perplex a man than any other learning; and to make a certain construction of them excedit jurisprudentum artem": Roberts v. Roberts, 2 Bulst. 130. "No will has a brother," declared Sir William Jones. Cited in Ball v. Phelan (Miss.), 23 L. R. A., N. S. 895, 903. We will agree that the will before us has "no brother" or any other close syntactical kin that we have any acquaintance with. This will must be construed by itself on its own unusual phrasing. Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another: Bechtel, Exr., v. Fetter, 267 Pa. 173, 177, STEWART, J.; Tarter's Est., 291 Pa. 458, 461; Mifflin's Est., 279 Pa. 429, 432.

The testatrix could easily have made it clear that her intention was that her brother, D. H. L. Smith, should take the Warnock Street property at a cost to him of $4,500, with the encumbrance of $3,000 still upon it, or at a price of $4,500, the estate assuming the encumbrance. But since she did not use unambiguous language, her intention must be inferred from the language she did use, in the light of the evidence of the value of the property and with the help of one's knowledge of mental processes.

It is in evidence that the assessed valuation of the property is $5,500 and that the value of the real estate ranges from $5,500 to $8,000. The will was made February 8, 1927. Mrs. Williamson died December 28, 1928. The estimate of the value of the property was made in March, 1930. Taking judicial knowledge of the fact that real estate generally has decreased in value since 1927, when the will was made, and keeping in mind

that owners of real estate customarily overvalue it rather than undervalue it, it appears to us that when Mrs. Williamson allocated the Warnock Street property to her brother, D. H. L. Smith, she believed it to be worth $7,500, that she was mindful of the fact that it had an encumbrance of $3,000, and that she intended that her brother, D. H. L. Smith, and his son George should take this property with its $3,000 burden at a price of $4,500. There might have been taxes due or other charges against the property at the date of her death, and it would be as reasonable to believe that Mrs. Williamson intended the estate to take care of these charges as it is to believe she intended the estate to pay off the mortgage of $3,000.

When Mrs. Williamson allocated the Warnock Street property to D. H. L. Smith at "a price of $4,500" she intended for him to take it *with* its burdens, *not without* its burdens. The word "price" as defined in Webster's New International Dictionary, is "the amount of money given, or set as the amount that will be given or received, in exchange for anything." In her will, Mrs. Williamson intended, we believe, to express this intention, to wit: "My brother, D. H. L. Smith, and his son George, shall be considered as one person for the purpose of receiving a one-fifth share of the residuary estate. In this one-fifth share shall be included the property at 5217 North Warnock Street, and they shall take it as it is, encumbrance and all. The price to them and to be charged against their share of the residuary estate shall be $4,500."

The interest which the testatrix gave to her brother, D. H. L. Smith, and the interest which she gave to the latter's son George, in the property at 5217 North Warnock Street, was a devise: Rupp v. Stevens, 297 Pa. 448; Saxton v. Mitchell, 78 Pa. 479. The word "devise" denotes a gift of real estate or an interest therein: Words & Phrases, 2d series, volume 2, page 28. The Wills Act of 1917, section 18, provides that, "unless the

testator shall otherwise direct by his will, the devisee of real estate which is subject to mortgage shall take subject thereto, and shall not be entitled to exoneration out of the other estate of the testator, real or personal."

The construction placed on the testatrix's will by the court below is well supported in reason.

The assignments of error are overruled and the decree of the court below is affirmed, costs to be paid by appellant.